## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **RORY WARD SR. individually, and** | § | |
| **ROWENA WARD individually, and** | § | |
| **On behalf of the Estate of** | § | |
| **RORY WARD JR.,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:23-CV-1708** |
| | § | |
| **HARRIS COUNTY, TEXAS,** *et al.* | § | |
| | § | |
| *Defendants.* | § | |

### The Wards' Response to Harris County's
### <u>Motion to Dismiss the Second Amended Complaint</u>

# **Table of Contents**

**Page**

Statement of the Nature & Stage of the Proceedings ................................................1

Statement of the Facts .............................................................................................1

Statement of the Issues & Standard of Review.......................................................1

Summary of the Argument.......................................................................................2

Law & Argument......................................................................................................2

     A.    Individual Liability ........................................................................3

          1.    The clinicians acted with deliberate indifference.....................4

          2.    The officers acted with deliberate indifference. ......................6

     B.    Municipal Liability........................................................................ 8

          1.    The Wards' allegations establish a longstanding pattern of inadequate medical care at the Jail. ........................9

          2.    The Wards' allegations satisfy Monell. ...................................10

          3.    The Wards' episodic act or omission claim passes muster. ...................................................................................14

          4.    The Wards' allegations also give rise to a conditions of confinement claim. ..................................................................17

     C.    Survival Claim ..............................................................................18

Conclusion .............................................................................................................19

i

## Table of Authorities

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................. 1

*Austin v. City of Pasadena,*
    74 F. 4th 312 (5th Cir. 2023) ............................................................ 6, 7

*Banuelos v. McFarland,*
    41 F.3d 232 (5th Cir. 1995) ................................................................. 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................. 2, 9, 11

*Brooks v. Taylor Cnty.,*
    592 F. Supp. 3d 550 (N.D. Tex. 2022) ........................................... 3, 4, 6

*Brown v. Bolin*
    500 Fed. Appx. 309 (5th Cir. 2012) ................................................... 16

*Davies v. LeBlanc,*
    No. CV 17-12575, 2020 WL 3832594 (E.D. La. July 8, 2020) .......................... 5

*Duvall v. Dallas Cnty., Tex.,*
    631 F.3d 203 (5th Cir. 2011) .............................................................. 17

*Easter v. Powell,*
    467 F.3d 459 (5th Cir. 2006) ............................................................ 3, 5

*Estate of Henson v. Wichita Cnty.,*
    Tex., 795 F.3d 456 (5th Cir. 2015) ................................................ 3, 8, 15

*Feliz v. El Paso County,*
    441 F. Supp. 3d at 504 ........................................................ 7, 13, 15, 16

*Ford v. Anderson Cnty., Tex.,*
    102 F.4th 292 (5th Cir. 2024) ...................................................... 5, 12, 13

*Garza v. City of Donna,*
    922 F.3d 626 (5th Cir. 2019) .......................................................*passim*

*Gobert v. Caldwell,*
    463 F.3d 339 (5th Cir. 2006) .................................................................. 3, 4, 5, 6

*Grabowski v. Jackson County Public Defenders Office,*
    79 F.3d 478 (5th Cir. 1996) ................................................................. 16

*Hicks-Fields v. Harris Cnty., Tex.,*
    860 F.3d 803 (5th Cir. 2017) ......................................................... 11, 13

*James v. Harris County,*
    577 F.3d 612 (5th Cir. 2009) ............................................................ 11

*Johnson v. Johnson,*
    385 F.3d 503 (5th Cir. 2004) ............................................................... 1

*Ledesma v. Swartz,*
    134 F.3d 369, 1997 WL 811746 (5th Cir. 1997) .................................... 5

*Lovato v. Austin Nursing Ctr., Inc.,*
    113 S.W.3d 45 (Tex. App.—Austin 2003, pet. granted) ..................... 19

*Monell v. Dep't of Soc. Servs. of City of N.Y.,*
    436 U.S. 658 (1978) ......................................................... 8, 10, 14, 15

*Murray v. Riverbend Detention Center,*
    2023 WL 5539667 (W.D. La. Aug. 7, 2023) ....................................... 7

*Peña v. City of Rio Grande City,*
    879 F.3d 613 (5th Cir. 2018) ....................................... 10, 12, 16, 18

*Perniciaro v. Lea,*
    901 F.3d 241 (5th Cir. 2018) .............................................................. 8

*Peterson v. City of Fort Worth, Tex.,*
    588 F.3d 838 (5th Cir. 2009) ........................................................... 12

*Sanchez v. Gomez,*
    No. EP-17-CV-133-PRM, 2020 WL 1036046 (W.D. Tex. Mar. 3,
    2020) ............................................................................................. 14

*Scott v. Moore,*
    114 F.3d 51 (5th Cir. 1997) ............................................................. 13

*Shepherd v. Dallas Cnty.,*
    591 F.3d 445 (5th Cir. 2009) ..................................................... 16, 17

*Sligh v. City of Conroe, Tex.*,
   87 F.4th 290 (5th Cir. 2023) ............................................................................... 13

*Vouchides v. Houston Community College*,
   2011 WL 4592057 (S.D. Tex. Sept. 30, 2011) ..................................................... 12

*Wagner v. Harris County, Texas*,
   Civ. No. 23-CV-02886, 2024 WL 2836332 (S.D. Tex. June 4,
   2024)......................................................................................................*passim*

*Webb v. Livingston*,
   2017 WL 2118969 (S.D. Tex. May 16, 2017) ...................................................... 19

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 71.021 ........................................................... 19

Tex. Est. Code § 201.001(c) ................................................................................... 18

**Rules**

Fed R. Civ. P. 12(b)(1) ............................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1

## Statement of the Nature & Stage of the Proceedings

Rory Ward Jr. died in Harris County's custody. His death was caused by individual misconduct driven by a routine practice of denying detainees timely, adequate medical care at the Harris County Jail. *See* Doc. 56. The Wards sued the County and 15 individuals. Now, the County moves to dismiss the Wards' claims of municipal liability.

## Statement of the Facts

On May 8, 2021, four inmates attacked Rory and slammed him headfirst onto a concrete floor. *See* Doc. 56. When Rory wobbled into the Jail's medical clinic bloodied and bruised, he told the staff that he had been attacked and had severe head pain. They gave him Pedialyte and Naproxen. Soon after, Rory collapsed in front of eleven detention officers. In response, they put him in a cell. Three days later, Rory was found "slumped" over. He died the next day.

## Statement of the Issues & Standard of Review

The County seeks to dismiss the Wards' municipal liability and survival claims under Rule 12(b)(6).[1] The Court must take the Wards' well-pleaded facts as true and view them in a light most favorable to the family. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). The Wards only need to plead facial plausibility, or allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] Rule 12(b)(1) is governed by the same standard as Rule 12(b)(6). Doc. 58, p.2.

678 (2009). Their allegations do not need to be detailed, and their claims survive even if "actual proof is improbable" so long as the allegations "raise a reasonable expectation that discovery will reveal" supporting evidence. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## Summary of the Argument

In 58 pages, the Wards detail their son's final days, including (1) the cruel inaction of 15 individuals and (2) the County's jailhouse customs and conditions that caused his death. To do so, the Wards rely on extensive allegations supported by photographs, internal records, public statements, governmental investigations, and at least 28 similar incidents. And because administration of Rory's estate is not necessary, Rowena Ward has capacity to bring the survival claim. Therefore, the Court should deny the County's motion.

## Law & Argument

As a detainee in the County's custody, Rory had the right to receive adequate medical treatment. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). That right was violated by two sets of actors. First, the individual defendants disregarded Rory's fatal medical crisis. Because that indifference caused Rory's suffering and death, they are individually liable. Second, the County maintained a custom or condition of inadequate medical care at the Jail. Because Rory's injuries were the result of that custom or condition, the County is also liable.

2

### A. Individual Liability

Some of the Wards' municipal liability arguments require individual misconduct, so the Wards start there. A jail official violates the law when (1) he has "subjective knowledge of a substantial risk of serious harm to [a] detainee" and (2) "respond[s] to that risk with deliberate indifference." *Estate of Henson v. Wichita Cnty.*, Tex., 795 F.3d 456, 464 (5th Cir. 2015). For subjective knowledge, an official need not intend for the harm to occur but instead only needs to be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and draw that inference. *Garza*, 922 F.3d at 634–35. Knowledge may be inferred "where the severity of the risk or injury is obvious or the cause of that injury or harm is plainly evident to the official." *Brooks v. Taylor Cnty.*, 592 F. Supp. 3d 550, 556 (N.D. Tex. 2022) (citing *Easter v. Powell*, 467 F.3d 459, 463–64 (5th Cir. 2006)). As for indifference, an officer violates the law when he doesn't "take reasonable measures to abate" a risk of harm to a detainee, meaning he delayed medical care, "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citation and quotations marks omitted); *Easter*, 467 F.3d at 464.

The County devotes little ink to individual liability. Doc. 58 at 12–13. It does not grapple with the detailed allegations of individual misconduct in the Wards' complaint, much less the photographic and documentary evidence included

therein. Instead, the County asserts generalized attacks. To rebut that, the Wards turn to the allegations.

### 1. *The clinicians acted with deliberate indifference.*

First, the clinicians. After being beaten and slammed "headfirst" onto the floor, Rory was brought to the medical clinic bleeding and wobbly. Doc. 58 at 6–7. On arrival, Rory told the staff that he was "jumped," "body slammed," and had "10/10" head pain. Doc. 58 at 7. Rory also had a laceration on the back of his head and a bruised eye. In response, the staff dressed Rory's wound and gave him Pedialyte and Naproxen. After exiting the clinic, Rory was unsteady and nauseous.

Based on those allegations, the clinicians were "subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed and drew that inference. *Garza*, 922 F.3d at 634–35. They knew Rory had had been body slammed and was suffering from severe head pain. The severity and cause of Rory's visible injuries were also obvious. *Brooks*, 592 F. Supp. 3d at 556. Despite the verbalized, demonstrable signs of blunt head trauma, the clinicians "ignored his complaints" and otherwise "evince[d] a wanton disregard" for Rory's medical crisis by not providing adequate medical care. *Gobert*, 463 F.3d at 346.

The County, in response, insists that they "provided Ward some medical care, whether sufficient or not." Doc. 58 at 14. That position is not only reflective of the indifference that is rampant at the Jail, it's also wrong. Many defendants provided no care whatsoever to Rory. And even if some did, it was so superficial as to not constitute treatment at all. *See Ford v. Anderson Cnty., Tex.*, 102 F.4th 292,

4

308–09, n. 7 (5th Cir. 2024) (recognizing deliberate indifference when doctor only treated "immediate symptoms" of disease via short-term medication, concluding that "responding to a serious medical issue with such a cursory level of care may still constitute deliberate indifference"); *Davies v. LeBlanc*, No. CV 17-12575, 2020 WL 3832594, at *8 (E.D. La. July 8, 2020).

In its motion, the County passingly references, *Gobert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006), a summary judgment ruling. That reliance is misplaced. The court in *Gobert* concluded that a doctor-defendant had subjective awareness of a risk of serious harm because he knew of the "health risk inherent in the type of wound," an infection. *Id.* at 348–49. And while the court ultimately dismissed the deliberate indifference claim, it did so partly based on the plaintiff's "extensive medical treatment" spanning two-and-half months. *Id.* at 351–52. Meanwhile, Rory's care was short-lived and atypical of blunt head trauma because his caretakers ignored the "commonplace" signs that are "routinely diagnosed" despite the known "health risk[s] inherent in the type of wound." *Id.* at 349.

This case tracks closer to *Ledesma v. Swartz*, 134 F.3d 369, 1997 WL 811746 (5th Cir. 1997). There, a doctor was found deliberately indifferent to injuries suffered in a fall. *Id.* at *1. Because he was "presented with [a] swollen jaw and complaints of severe pain and severe trauma," the doctor knew the plaintiff "faced a substantial risk of serious harm." *Id.* So, when he supplied a regimen of Motrin, a liquid diet, and a future x-ray, he disregarded the risk by failing to "take reasonable measures to abate it." *Id. See also Easter*, 467 F.3d at 464–65 (finding

deliberate indifference because nurse knew of heart condition and saw obvious signs of urgent, serious cardiac risk like chest pain but did not treat).

## 2. *The officers acted with deliberate indifference.*

Now, the officers. Following his discharge, Rory stumbled, laid on the floor, and vomited on multiple occasions. Doc. 57 at 7–11. Shortly after leaving the clinic, Rory collapsed. Eleven officers gathered around him, but no one provided care or brought Rory to the clinic. Instead, they directed Rory into a holding cell. Upon exiting the cell, Rory vomited and collapsed again. The officers picked Rory up and brought him to another cell. There, Rory vomited yet again and called for help. None came.

Based on those allegations, the officers were "subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed and drew that inference. *Garza*, 922 F.3d at 635. Rory was injured, unable to walk, nauseous, vomiting, and bleeding. And based on their training and the known indicators of blunt head trauma, the severity and cause of Rory's injuries were obvious. *Brooks*, 592 F. Supp. 3d at 556. In fact, three days after his attack, hospital doctors noted that Rory still had "obvious signs of head trauma." Doc. 56 at 12. Yet, the officers "ignored his complaints," withheld or delayed crucial medical care, and otherwise "evince[d] a wanton disregard" for Rory's medical crisis. *Gobert*, 463 F.3d at 346; *Austin v. City of Pasadena*, 74 F. 4th 312, 329 (5th Cir. 2023) (finding plausible deliberate indifference when officers administered "obviously" wrong treatment "counter" to training when responding to seizure).

6

In its motion, the County generally cites to *Banuelos v. McFarland*, 41 F.3d 232 (5th Cir. 1995). But that case isn't germane. There, the plaintiff complained about an old "ankle injury." *Id.* at 235. In response, officials conducted two separate examinations and an x-ray, but found no identifiable injuries or symptoms, much less any "serious medical need." *Id.* at 235. Here, the County doesn't contest the seriousness of Rory's injuries. And as is plainly evident from photographs, Rory exhibited the signs of an identifiable, ongoing, and severe medical emergency but received no non-superficial treatment.

*Feliz v. El Paso County* is instructive. 441 F. Supp. 3d 488 (W.D. Tex. 2020). There, the plaintiff was attacked by another inmate. *Id.* at 495. Although he was treated and prescribed medication, he began vomiting and experiencing abdominal pain a few days later. *Id.* When he reported that to officers, they ignored him. *Id.* As a result, the officers were "deliberately indifferent to a serious risk of harm" to the plaintiff. *Id.* at 503 (citing *Coleman v. Sweetin*, 745 F.3d 756 (5th Cir. 2014)). Here, even if Rory had received some prior treatment, he exhibited the evident symptoms of an active medical crisis. But the officers did not act. *Austin,* 74 F. 4th at 328 ("[P]romptly failing to call for emergency assistance when a detainee faces a known, serious medical emergency" is unconstitutional (citation omitted)); *Murray v. Riverbend Detention Center*, 2023 WL 5539667, at *3 (W.D. La. Aug. 7, 2023), *report and recommendation adopted*, 2023 WL 5539646 (W.D. La. Aug. 28, 2023) (finding plausibly alleged deliberate indifference when officers

denied care despite request for help, verbalized pain, and "obvious signs" of injury like labored breathing).

The County suggests that Rory's prior receipt of cursory medical treatment absolves the officers of liability. Doc. 58 at 14. But the County misunderstands this lawsuit. Rory languished and died because he didn't receive timely, adequate medical care, including from officers who knew he needed it. Unlike in cases where an official established the reasonableness of their conduct, the officers' cruel response defeats any safe harbor. *See Perniciaro v. Lea*, 901 F.3d 241, 257 (5th Cir. 2018) (noting that sometimes officials may not be liable if they "responded reasonably to the risk, even if the harm ultimately was not averted."). Here, when faced with an obvious medical emergency, the officers merely put Rory in a cell.

### B. Municipal Liability

The County may be liable for the violation of a detainee's right to medical care. *Garza*, 922 F.3d at 632 (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978)). Municipal liability for inadequate medical care falls into one of two camps—it's "characterized either as a condition of confinement or [] an episodic act or omission." *Id.* (citation omitted). The former targets the "general conditions, practices, rules, or restrictions of pretrial confinement" while the latter attacks "a particular act or omission of one or more officials" stemming from a policy or practice. *Id.* (citations and quotations marks omitted). There is "no rule

barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately."[2] *Estate of Henson*, 795 F.3d at 462.

### 1. *The Wards' allegations establish a longstanding pattern of inadequate medical care at the Jail.*

Under either theory, the Wards must identify a practice or condition of inadequate medical treatment at the Jail. Generally, the County insists that the Wards "don't plead specific facts about the alleged policies," but instead "simply state that such policies exist based only on Harris County's alleged conduct." Doc. 58 at 10. The County is mistaken on both the law and the facts. The Wards are entitled to rely on the County's *alleged* conduct at this stage, *Twombly*, 550 U.S. at 555, and those allegations suffice.

Turning to the Complaint, the Wards allege that—based on a pervasive pattern of inadequate medical care—there is an unconstitutional custom or condition at the Jail. Doc. 56 at 54. The Wards rely on public records, investigative accounts, news sources, federal and state reports, Sheriff Ed Gonzalez's statements, civil lawsuits, and at least 28 similar incidents. Doc. 56 at 13–21. For example, the Wards describe five citations from a regulatory authority—the Texas Commission on Jail Standards—that identify deficiencies in the Jail's medical care system as well as a U.S. Department of Justice report finding a failure to provide

---

[2] The County concedes that the Wards' allegations "raise an episodic denial of medical care and a related, yet distinct, unsafe conditions of confinement claim." Doc. 58 at 14. So, the Court does not need to decide the issue at this time.

"consistent and adequate" care in the Jail that has resulted in an "unacceptable risk of death or injury." Doc. 56 at 13–19.

In its motion, the County fails to mention that many of those same things were relied on by Judge Ellison when he recently rejected the County's motion to dismiss in *Wagner v. Harris County, Texas*, Civ. No. 23-CV-02886, 2024 WL 2836332 (S.D. Tex. June 4, 2024), even though the Wards incorporated that lawsuit by reference. In *Wagner*—based on the DOJ report and many of the same incidents and TCJS citations—Judge Ellison concluded that the plaintiffs' "allegations suggest a sustained pattern of substandard medical care [at the Jail] that is sufficiently pervasive to constitute municipal policy." *Id.* at *10–11. The Wards' allegations do the same.

### 2. *The Wards' allegations satisfy Monell.*

The County suggests that the Wards' two municipal liability theories are "both subject to the requirements of *Monell*." Doc. 58 at 18. It is unclear if that is correct, *Wagner*, 2024 WL 2836332, at *9, n. 3, but the Wards' allegations pass *Monell* muster regardless. To establish § 1983 liability under *Monell*, the Wards must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citation and quotation marks omitted). A policy may take the shape of a "practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (citation and

quotation marks omitted). Although the municipality must have knowledge of the practice, a plaintiff can show either actual knowledge—for example, "receipt of written information"—or constructive knowledge—for example, evidence of persistent misconduct that would've been discovered with proper oversight. *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808–09 (5th Cir. 2017).

First, a policy. The Wards allege a policy by way of a pervasive pattern of inadequate medical treatment. Doing so "requires similarity and specificity" based on the "specific violation in question," but the similarity requirement "should not be exaggerated" and the incidents only need to "be fairly similar." *Wagner*, 2024 WL 2836332, at *10 (quoting *Hicks*, 860 F.3d at 810). No precise number of incidents is required, and less numerous but severe violations can also show that the municipality or its policymaker "would necessarily have learned of the objectionable practice and acceded to its continuation." *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)). Here, the Wards advance at least 28 violation-specific incidents. In response, the County does not deny the details of each incident but instead argues that they're not detailed enough. Doc. 58 at 11. But the Wards' identify the injury, cause, and the presence of inadequate medical treatment in multiple similar incidents. *Twombly*, 550 U.S. at 555 (finding allegations do not need to be excessively detailed). That "evidence of similar incidents is sufficient to plead the existence of" a policy. *Wagner*, 2024 WL 2836332, at *10.

The County cursorily references *Vouchides v. Houston Community College*, 2011 WL 4592057, at \*12 (S.D. Tex. Sept. 30, 2011). But that case is lacking. There, the plaintiff tried to establish a pattern of inadequate supervision through a scanty reference to a few sporadic, dissimilar complaints of legal conduct by a single officer. *Id.* at \*13. In fact, the court distinguished the case from prior decisions where plaintiffs provided "some factual detail about prior similar incidents." *Id.* at \*13. Similarly, in *Peña v. City of Rio Grande*—another case passingly cited by the County—the plaintiff's claim was dismissed because he only submitted a "single incident" to support of a pattern. 879 F.3d at 622. Here, not only do the Wards cite to numerous similar incidents and relevant reports, but those sources span more than a decade. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (affirming summary judgment on no pattern of excessive force when plaintiff pointed to multiple incidents that only spanned a four-year period and took place in a large metropolitan area).

Second, a policymaker. The County does not contest Sheriff Gonzalez's status as a policymaker, but instead argues the Wards haven't shown the requisite knowledge or that he adopted any policy with deliberate indifference to its "highly predictable" consequences. Doc. 58 at 12. That's wrong for three reasons. One, the Wards plead a pattern of past misconduct that proves deliberate indifference. *Ford*, 102 F.4th at 319–20 (noting that "deliberate indifference" to the "known or obvious consequences" of a policy's adoption can be established by "showing a pattern of prior constitutional violations"); *Wagner*, 2024 WL 2836332, at \*15;

*Hicks*, 860 F.3d at 809 (noting publicity as source of constructive knowledge). Two, unlike in other cases, it's clear that Sheriff Gonzalez had "actual knowledge" that the Jail's practice endangered inmates. *See Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997). For example, Sheriff Gonzalez has publicly spoken about and fielded concerns regarding impediments to "detainee access to medical care" at the Jail. Doc. 56 at 20–21; *Wagner*. 2024 WL 2836332, at 14. Three, the outcome was obvious. *Ford*, 102 F.4th at 319–20 (finding that a "constitutional violation [is the] 'highly predictable' consequence of a policy that purposefully delays emergency care to detainees requiring hospitalization."). Here, Sheriff Gonzalez knew of an offensive pattern, yet ignored the obvious consequences of it—the inadequate care of detainees like Rory.

Third, causation. The Wards allege that the County's practice was the "moving force" behind the violation of Rory's constitutional rights. But for the custom at the Jail, the individual defendants would not have disregarded Rory's medical emergency. *Feliz*, 441 F. Supp. 3d at 504–05 (finding "moving force" prong satisfied when "officers deferred to [a] Jail [] practice, rather than relying on their own judgment and experience, in deciding to deny medical care to [the plaintiff]."); *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 302 (5th Cir. 2023) (finding "moving force" requirement not satisfied because officer wasn't following challenged policy during alleged misconduct).

To minimize the Wards' allegations, the County advances two other arguments. First, it insists that lawsuits are not evidence of a pattern. But Judge

Ellison "soundly rejected" that exact argument because such a "proposed rule would make it functionally impossible to bring a *Monell* claim over an unwritten policy." *Wagner*, 2024 WL 2836332, at * 11, n. 4. Second, the County maintains that subsequent incidents cannot establish a pattern. But the County misunderstands the caselaw and the Wards' argument. Subsequent incidents are relevant for *confirming* a pattern. *See Sanchez v. Gomez*, No. EP-17-CV-133-PRM, 2020 WL 1036046, at *16 (W.D. Tex. Mar. 3, 2020) ("[T]he Court is inclined to consider future instances as still probative in determining whether a 'pattern' existed at the time of [plaintiff's] death."). And so long as there is evidence of prior incidents, subsequent incidents have weight. *See id.* ("The *Valle* Court established that a claim may not survive summary judgment when it relies exclusively on future instances . . . However, Plaintiffs in this case have provided prior instances, addressing the *Valle* Court's concerns."). Having satisfied *Monell*'s pleading requirements, the Wards turn to their municipal liability theories.

### 3. *The Wards' episodic act or omission claim passes muster.*

To prove "liability in an episodic-act case, a plaintiff must show (1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 F.3d at 634 (citation and quotation marks omitted). For the first prong, a plaintiff must establish "an underlying

violation by [a] state official," or individual deliberate indifference. *Henson*, 795 F.3d at 464, n. 4.

As for the second prong, it closely tracks the *Monell* framework. Specifically, the plaintiff must identify a policy that caused the violation and was maintained by a policymaker with deliberate indifference. *Feliz*, 441 F. Supp. 3d at 502. To determine if a policy was so maintained, a court "considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the [detainee's] rights.'" *Id.* (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)). Notably, a policymaker's deliberate indifference "may be inferred either from a pattern of constitutional violations" or "a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Garza*, 922 F.3d at 637–38 (citation and quotation marks omitted). At this stage, though, indifference may simply be inferred from "well-pleaded factual allegations of a widespread practice." *Feliz*, 441 F. Supp. 3d at 504.

The Wards have already established the individual defendants' underlying misconduct. As for objective deliberate indifference, the Wards have alleged the existence of a pervasive pattern of constitutional violations. Consider *Feliz v. El Paso County*, 441 F. Supp. 3d at 504. There, the court found a municipality deliberately indifferent because its policymaker "knew or should have known that there was a pervasive practice of denying adequate medical treatment" at the jailhouse. *Id.* Specifically, the practice had "become so widespread and problematic

that [it] attract[ed] the attention of outside actors" like TCJS, so it was "plausible that the Sheriff should have been aware of such practices." *Id.* Here, the Wards point to numerous incidents and public information, including from external groups such as investigative journalists and TCJS, that make clear the County had notice of the issue. *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 453 (5th Cir. 2009) (finding plausible existence of an inadequate treatment policy based on governmental reports and other "independent evidence").

In response, the County generally references *Grabowski v. Jackson County Public Defenders Office*, 79 F.3d 478 (5th Cir. 1996). That case is not informative, though, because the court's two-sentence ruling held there was "no showing of the existence of a policy or custom" but failed to explain why. *Id.* Regardless, this case differs from those where the Fifth Circuit rejected municipal liability. For example, in *Brown v. Bolin*, there was "no evidence of failure of the system of medical care at the [] Jail that would indicate that the County was deliberately indifferent in maintaining [a] policy." 500 Fed. Appx. 309, 316–17 (5th Cir. 2012). Specifically, the plaintiff didn't offer evidence of "past instances where inmates suffered" or that the policymaker knew the jail's medical system "had been assessed as deficient by any reviewing authority." *Id.* Here, the Wards advance support—including numerous incidents and reports—of a pattern of inadequate treatment and the Sheriff's actual or constructive knowledge of that deficiency. The County's reliance on *Peña* fails for similar reasons. 879 F.3d at 622 (rejecting allegation of pattern because plaintiff only submitted a single incident).

16

### 4. *The Wards' allegations also give rise to a conditions of confinement claim.*

To prove a conditions of confinement claim, a plaintiff must identify (1) a rule, restriction, or intended practice; "(2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [his] constitutional rights." *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 207 (5th Cir. 2011). An extended or pervasive pattern of misconduct may "reflect an unstated or *de facto* policy" that constitutes "an intended condition or practice." *Id.* (quoting *Shepherd*, 591 F.3d at 452). Notably, there is no requirement of an intentional policy or deliberate indifference—once a pattern is established, a municipality's intent to subject the plaintiff to an unconstitutional condition "is presumed when it incarcerates the detainee in the face of such known conditions and practices." *Id.*; *Shepherd*, 591 F.3d at 455.

The Wards have identified a pervasive pattern of inadequate medical treatment. Withholding necessary medical care serves no penological purpose, and the County does not argue it does. *Shepherd*, 591 F.3d at 454; *Wagner*, 2024 WL 2836332, at *9. Finally, the condition led to the violation of Rory's rights and, ultimately, his death.

In its motion, the County argues that the Wards have not "pleaded a pervasive pattern of serious deficiencies in providing for the needs of Harris County Jail inmates." Doc. 58 at 17. For support, the County broadly cites *Peña*, 879 F.3d at 622. Again, that case is distinguishable because the plaintiff only relied

on a "single incident" to prove the existence of a pattern. *Id.* Ultimately, the County fails to grapple with Judge Ellison's decision finding a condition of inadequate medical was apparent based on "extensive evidence suggesting the relevant conduct is ubiquitous in the Jail" like TCJS reports, the DOJ report, similar incidents, and Sheriff Gonzalez's public statements. 2024 WL 2836332, at *8.

The Wards point to *Shepherd v. Dallas County*, a case relied on by the County. 591 F.3d 449. There, the plaintiff alleged that the "jail's system of providing medical care to inmates with chronic illness" was constitutionally deficient and, as a result, caused his stroke. *Id.* at 453. To "demonstrate the existence of an unlawful condition," the plaintiff presented "extensive independent evidence" of the jail's maltreatment through county evaluations, a DOJ report, and other documents. *Id.* From that, "the court could reasonably infer a de facto jail policy of failing properly to treat inmates with chronic illness." *Id.* at 453. The allegations before the Court—supported by independent evidence—are similarly ample and detailed. When faced with many of the same facts, Judge Ellison agreed.

### C. Survival Claim

Finally, the County contends that Rowena Ward lacks capacity to bring a survival claim on behalf of Rory's estate. Rowena is Rory's mother and an heir to his estate. Doc. 56 at 56.; TEX. EST. CODE § 201.001(c). Ordinarily, an administrator is the only person who can sue on behalf of an estate. But an heir may sue when "there is no administration" and "none is necessary or desired by those interested in [the] estate." *Lovato v. Austin Nursing Ctr., Inc.*, 113 S.W.3d 45, 52 (Tex. App.—

Austin 2003, pet. granted); TEX. CIV. PRAC. & REM. CODE ANN. § 71.021. Administration is not necessary when the estate owes less than two debts or "if there is a family settlement agreement, highly favored by courts, in which the heirs agree to distribution of the estate property." *Id*. If a plaintiff relies on a family agreement, she need not "prove that there are no debts against the estate"—instead, she "need only show that they have arranged to pay the debts of the estate in their family settlement agreement." *Webb v. Livingston*, 2017 WL 2118969, at *3 (S.D. Tex. May 16, 2017).

Here, Rory died intestate without property and any heirs besides his parents. Exhibit A. No estate is pending, necessary, or desired. Instead, the Wards have agreed upon how to distribute any proceeds from the survival claim, the sole asset of Rory's estate. Exhibit A, p. 4. Importantly, the Wards have arranged to use such proceeds to first satisfy whatever debts are owed by Rory's estate. That agreement alone suffices. *Webb*, 2017 WL 2118969, at *3 (rejecting capacity argument based largely on family agreement).

## Conclusion

Taking the Wards' allegations as true and viewing them in a light most favorable to the family, the Wards have adequately plead municipal liability claims against the County. So, the Court should deny the County's motion.

Respectfully submitted,

**SUSMAN GODFREY, L.L.P.**

*/s/ Jonathan J. Ross*
Jonathan J. Ross
State Bar No. 00791575
S.D. Bar No. 18293
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
jross@susmangodfrey.com

*Attorney-in-Charge for the Wards*

OF COUNSEL:

Shawn Blackburn
State Bar No. 24089989
S.D. Bar No. 2799811
Hayden Q. Hawkins
State Bar No. 24125270
S.D. Bar No. 3868137
**SUSMAN GODFREY, L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
sblackburn@susmangodfrey.com
hhawkins@susmangodfrey.com

## **Word Count Certificate**

Pursuant to the Rules of this Court, I certify that this brief was prepared using Georgia 13-point typeface and contains 4,931 words, excluding the parts of the document that are exempted by this Court's rules. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

*/s/ Jonathan J. Ross*
Jonathan J. Ross

20

## **Certificate of Service**

This is to certify that a true and correct copy of the foregoing instrument has been served on all counsel of record via the Court's ECF on this 15th day of October, 2024.

*/s/ Jonathan J. Ross*
Jonathan J. Ross